UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEREK WILLIAMSON,

      Petitioner,                                   Civil Action No. 3:13-cv-00219

vs.                                            HON. BERNARD A. FRIEDMAN

KEVIN GENOVESE,

      Respondent.
_____/

### ORDER ACCEPTING AND ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS

In this matter, petitioner Derek Williamson has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Magistrate Judge Jeffery S. Frensley has submitted a report and recommendation ("R&R") in which he recommends that the Court deny the application. Petitioner has filed timely objections to which respondent has not responded.

Under Fed. R. Civ. P. 72(b)(3), the Court must review de novo those portions of the R&R to which proper objections have been made. Having considered all of petitioner's claims, the R&R, and petitioner's objections, the Court agrees with the magistrate judge's analysis and recommendation. The Court shall therefore adopt the R&R and deny the petition.

Petitioner was convicted in Sumner County of first-degree premeditated murder and sentenced to life imprisonment.[1] The Tennessee Court of Criminal Appeals affirmed that

---

[1] Petitioner was charged with shooting and killing Grady Carter in front of Carter's house in Westmoreland, Tennessee, on June 18, 2008. *See State v. Williamson*, No. M2010-01067-CCA-R3CD, 2011 WL 3557827, at *1 (Tenn. Crim. App. Aug. 12, 2011). As the facts of the case are stated in detail in that court's opinion, and in the R&R, the Court need not restate them here.

judgment over petitioner's many claims of error.[2]  *See State v. Williamson*, No. M2010-01067-CCA-R3CD, 2011 WL 3557827 (Tenn. Crim. App. Aug. 12, 2011).  The Tennessee Supreme Court denied petitioner's application for permission to appeal.

Petitioner later filed a motion in the trial court for post-conviction relief, arguing that his trial attorneys had been ineffective for various reasons.[3]  The trial court denied that

---

[2] On direct appeal, petitioner argued "that the trial court committed reversible error when it twice told prospective jurors during voir dire that the State was not seeking either the death penalty or the penalty of life without parole on the murder charge and that should you find the Defendant guilty of first-degree murder in this case, there will be an automatic life sentence imposed"; "that the trial court erred in [not] granting his motion for a mistrial when Sumner County Sheriff's Deputy Brandon Clark inadvertently testified that 'the [D]efendant had been in trouble before'"; "that the trial court erred by allowing Westmoreland Police Sergeant Karl Haynie to testify as an expert that certain marks he found on the curb at the crime scene were consistent with ricochet marks from bullets"; "that the trial court erred in allowing the State to introduce two photographs taken by Dr. Deering during his autopsy of the victim"; "that the evidence presented at trial failed to support a flight instruction and that the trial court erred by giving such an instruction to the jury"; "that there was insufficient evidence of premeditation to support his first-degree murder conviction [because] . . . the proof failed to demonstrate that he was not sufficiently free from excitement and passion as to be capable of premeditation"; "that the trial court erred in denying his request for a jury instruction on self-defense based on his testimony that he panicked when he saw the victim approach his car with his hands up"; and "that the cumulative effect of the errors in the trial court effectively denied him a fair trial."  *State v. Williamson*, No. M2010-01067-CCA-R3CD, 2011 WL 3557827, at *4, *7-10, *12-13, *15 (Tenn. Crim. App. Aug. 12, 2011).

[3] As summarized by the Tennessee Court of Criminal Appeals, petitioner

> contends that his trial attorneys provided ineffective assistance by failing to investigate and develop evidence to challenge the State's proof of the culpable mental state required for first degree murder and by failing to offer the evidence at the trial. The Petitioner's allegations relate to the failure to obtain a prompt psychiatric evaluation and to offer testimony of a mental health expert at the trial. He also contends that the post-conviction court erred in ruling that Dr. Montgomery's testimony would have been inadmissible if the defense had attempted to present it at the trial.

*    *    *

2

motion. The Tennessee Court of Criminal Appeals, applying *Strickland v. Washington*, 466 U.S. 668 (1984), affirmed on the grounds that trial counsel's performance was not deficient and/or that their performance, while deficient, did not prejudice petitioner. The Tennessee Supreme Court again denied petitioner's application for permission to appeal.

In the instant petition, as amended, petitioner asserts the following claims:

GROUND ONE: Petitioner was denied his right to present a defense under the Sixth and Fourteenth Amendments to the United States Constitution by the refusal of the trial court to give a self-defense instruction.

GROUND TWO: Petitioner was denied his right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by the refusal of the trial court to give a self-defense instruction.

GROUND THREE: Petitioner was denied his right to Due Process and a Fair Trial under the Fourteenth Amendment to the United States Constitution by the trial court's failure to grant a mistrial after a state's witness stated that petitioner had previously been in trouble.

GROUND FOUR: Petitioner was denied his right to Due Process and a Fair Trial under the Fourteenth Amendment to the United States Constitution by the Tennessee Court of Criminal Appeals denying him relief under the cumulative errors made by the trial

---

[Further,] the Petitioner contends that his trial attorneys provided ineffective assistance in investigating and preparing for the trial in several respects. He contends they failed to investigate and preserve cell phone records and voice messages, failed to conduct effective interviews of available witnesses, failed to prepare for and conduct an effective cross-examination of Brandon Clark, and failed to develop a defense theory. He argues that these failures, individually or collectively, entitle him to post-conviction relief.

*Williamson v. State*, 476 S.W.3d 405, 418, 424 (Tenn. Crim. App. 2015).

3

court.

GROUND FIVE [Withdrawn]

GROUND SIX – In his appeal to the Tennessee Court of Criminal Appeals, Mr. Williamson raised the following issues:

1. Was the finding of the Court below declaring specific portions of attorney Kline Preston's testimony credible, after first declaring him to be not very credible, contrary to the record and erroneous?

2. Did the court below violate Mr. Williamson's right to due process and a meaningful and fair review of his post-conviction claim of ineffective assistance of counsel by finding certain portions of Mr. Preston's testimony credible despite his testimony being contrary to the record?

3. Did the court below abuse its discretion by finding that Dr. Montgomery's testimony was inadmissible?

4. Did the finding of the court below that Dr. Montgomery's testimony was inadmissible violate Mr. Williamson's right to present a defense pursuant to Article I, sections 8 and 9 of the Tennessee Constitution and the Sixth and Fourteenth Amendments to the United States Constitution?

5. Did trial counsel's patently deficient performance deny Mr. Williamson his right to a fair trial and the effective assistance of counsel under Article I, section 9 of the Tennessee Constitution and the Sixth and Fourteenth Amendments to the United States Constitution?

6. Did trial counsel's inadequate consultation prevent adequate investigation and preparation leading to trial counsel's deficient performance and the denial of Mr. Williamson's right to the effective assistance of counsel?

7. Did trial counsel deprive Derek Williamson of his constitutional right to the effective assistance of counsel by their failure to investigate and develop evidence to challenge mens rea?

4

8. Did trail counsel's additional deficient performance, either singularly or cumulatively, deny Mr. Williamson his right to the effective assistance of counsel?

> a. Did trial counsel's failure to timely investigate and prepare for trial deny Derek Williamson his right to the effective assistance of counsel?

> b. Did trial counsel's failure to timely investigate and preserve cell phone records and voicemail deny Mr. Williamson his right to the effective assistance of counsel?

> c. Did trial counsel fail to provide the effective assistance of counsel by their failure to effectively interview readily available witnesses?

> d. Was trial counsel's failure to prepare for and effectuate effective cross-examination deficient performance that prejudiced Mr. Williamson?

> e. Did trial counsel's failure to develop a theory of the defense deny Mr. Williamson his right to the effective assistance of counsel?

GROUND SEVEN [Withdrawn]

GROUND EIGHT: Mr. Williamson was denied his right to present a defense under the Sixth and Fourteenth Amendment to the United States Constitution by the decisions of the Criminal Court for Sumner County and the Court of Criminal Appeals that the testimony of Stephen Montgomery, M.D., was not admissible on the issue of whether Mr. Williamson lacked the capacity to premeditate and reflect at the time of the offense.'

GROUND NINE: Mr. Williamson was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution by the conclusion of the Criminal Court and Court of Criminal Appeals that, because Dr. Montgomery's testimony was inadmissible, trial counsel's failure to investigate Mr. Williamson's mental state at the time of the offense was not prejudicial and, therefore, did not deny Mr. Williamson the right to the effective assistance of counsel.

5

Pet. at 6; Am. to Pet. at 3-6.

In his exceptionally thorough R&R, the magistrate judge carefully examined each of these claims and found none to merit habeas relief. Petitioner focuses his objections on the following three issues:

> 1. Williamson was unconstitutionally denied a jury instruction on self-defense when his testimony and other evidence fairly raised that defense.

> 2. Williamson was denied the effective assistance of counsel because counsel failed to develop and use expert testimony regarding post-traumatic stress disorder that was relevant to the element of premeditation.

> 3. Williamson was denied the effective assistance of counsel because counsel failed to investigate and use readily-available evidence that would support both his self-defense defense and his defense against premeditation.

Pet.'s Objs. at 1.

### Self-Defense Instruction

Regarding the first issue, petitioner argues that the trial court should have instructed the jury on self defense because he felt threatened by the victim. The state appellate court rejected this argument on direct appeal for the following reasons:

> The Defendant argues that the trial court erred in denying his request for a jury instruction on self-defense based on his testimony that he panicked when he saw the victim approach his car with his hands up. The trial court, however, determined that the Defendant's actions of taking a loaded weapon to a confrontation he initiated did not entitle him to self-defense instruction. We agree.

> The defense of self-defense is expressly provided for in Tennessee by statute and is defined, in relevant part, as follows:

> > (a) A person is justified in threatening or using force

6

against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39–11–611(a).

A trial court has the duty to "give a complete charge of the law applicable to the facts of the case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986). This duty includes "giving jury instructions concerning fundamental issues to the defense and essential to a fair trial...." *State v. Anderson*, 958 S.W.2d 9, 17 (Tenn. Crim. App. 1998). *See also Myers v. State*, 185 Tenn. 264, 206 S.W.2d 30, 32 (Tenn. 1947) (holding that a defendant is entitled to an affirmative instruction on self-defense if raised by the evidence). In deciding whether a defense instruction is warranted, the trial court "must examine the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense." *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001).

Though the question of whether an individual acted in self-defense is a factual determination to be made by the jury, *see State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993), our law also mandates that "[t]he issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof ." Tenn. Code Ann. § 39–11–203(c). Additionally, this Court is instructed to interpret the above statute to require that "[t]he defendant has the burden of introducing admissible evidence that a defense is applicable." *Id*., Sentencing Commission Comments; *see also State v. Leaphart*, 673 S.W.2d 870, 873 (Tenn. Crim. App. 1983) (holding "[a]lthough it is well-settled that an accused is entitled to an affirmative instruction on every issue fairly raised by the evidence, there is no requirement that the court charge on matters not raised by the proof"). Thus, this Court may find error only if a jury charge "fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

7

Even considering the evidence in the light most favorable to the Defendant, we agree with the trial court that the evidence contained in the record does not raise a factual issue of self-defense. Though the Defendant testified that he was afraid of the victim based on months of harassing text mail and voice mail messages, the victim never physically harmed the Defendant or even attempted to. On the evening of the shooting, the Defendant decided that he had had enough of the victim's haranguing and drove thirteen miles to the victim's home, with a loaded semi-automatic weapon. Upon seeing the victim approach his car, with his hands raised in the air and bearing no weapon, the Defendant said he "panicked" and unloaded the entire magazine of twelve bullets plus the one bullet in the chamber in the direction of the victim. Seven shots penetrated the victim's left back, rear shoulder and arm area. Nothing in the record suggests that the Defendant acted to protect himself against the victim's use or attempted use of unlawful force. Accordingly, we conclude the trial court's refusal to instruct the jury on self-defense was not error.

*Williamson*, No. 2011 WL 3557827, at *13-14.

The magistrate judge concluded that this claim lacks merit because the state court's decision was neither inconsistent with Supreme Court precedent nor an unreasonable interpretation of the facts in light of the evidence. He noted that criminal defendants have a constitutional right to present a complete defense, but that this right requires trial courts to instruct the jury regarding a particular defense only if the defense is supported by the evidence. *See* R&R at 12 (citing *Mathews v. United States*, 485 U.S. 58, 63-64 (1998), and *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002)). The magistrate judge found the state court's explanation as to why the evidence in the present case did not support this defense to be reasonable both factually and as a matter of law.

In his objections, petitioner first argues that "[i]t was error under state law to deny the self-defense instruction." Pet.'s Objs. at 15. The Court rejects this objection because the

8

issue on habeas review is not whether the state courts' assessment of the claim is correct under state law, but whether it is inconsistent with Supreme Court precedent or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (2). Even if this were a proper objection, petitioner has not shown that the state court's determination was erroneous as a matter of state law. As the Tennessee Court of Criminal Appeals noted, Tennessee law requires that a requested instruction concerning a defense be reasonably supported by the evidence. In the present case, the state courts reasonably concluded that such evidence was lacking because petitioner drove to the victim's house, opened his car door, and shot the unarmed victim several times as the victim approached him with his arms raised.

In his objections, petitioner also argues that "[t]his error was a violation of federal constitutional law" because "a jury-instruction error rises to the level of constitutional error when it 'so infected the entire trial that the resulting conviction violates due process.'" Pet.'s Objs. at 19 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Petitioner's reliance on *Cupp* is misplaced, as that case involved a questionable instruction that was given, not one that defendant requested but was denied. Petitioner next argues that "a jury-instruction error rises to the level of constitutional error when it relieves the state of having to prove an element of the offense beyond a reasonable doubt." Pet.'s Objs. at 10 (citing *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979)). Reliance on *Sandstrom* is similarly misplaced, as that case, like *Cupp*, involved an instruction that was given, not one that was requested but denied. Moreover, the rule from *Sandstrom* – that due process is violated if the court instructs the jury in such as way that it "reliev[es] the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind," *Sandstrom*, 442 U.S. at 521 – has no application in the present

9

case. The trial court's decision not to instruct on self defense did not relieve the prosecution of its burden to prove all elements of first-degree premeditated murder beyond a reasonable doubt.

The Court has considered the rest of petitioner's objections regarding this issue and finds none to have merit. The Court agrees with the magistrate judge's analysis. The Tennessee Court of Criminal Appeals' rejection of this claim was reasonable factually and consistent with Supreme Court precedent requiring that "an instruction [be given] as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews*, 485 U.S. at 63. In the present case, the state appellate court reasonably concluded that the requested instruction was properly refused because the evidence did not support it. Petitioner's objections as to this claim are overruled.

### Ineffective Assistance: Failure to Develop and Use PTSD Testimony

Petitioner next objects to the magistrate judge's analysis of his claim that his trial attorneys were ineffective for failing to "develop and use expert testimony regarding post-traumatic stress disorder that was relevant to the element of premeditation." Pet.'s Objs. at 1, 22. Petitioner argues that he suffered from PTSD as a result of the victim having threatened and harassed him (by phone, text message, and in person), and that his attorneys should have retained an expert to testify to this, as it would have supported his defense that he lacked the capacity to premeditate. Shortly before trial, petitioner's attorneys did retain such an expert, Dr. Montgomery, but they withdrew him a witness when the prosecutor objected on grounds of relevancy and timeliness. *See Williamson*, 476 S.W.3d 405 at 419. In the post-conviction proceeding, the Tennessee Court of Criminal Appeals agreed that counsel's performance in this regard was deficient, but it rejected the claim on the grounds that petitioner had not

10

demonstrated prejudice, as required by *Strickland*, because Dr. Montgomery's testimony would

not have been admissible under Tennessee law.  That court explained its decision at length as

follows:

> Upon review, we conclude that in light of the facts of the case and the chosen defense theory, the failure to consult a mental health expert and to obtain an evaluation of the Petitioner in a timely manner was deficient performance. The facts available to the Petitioner's attorneys at the time warranted prompt consultation with a mental health expert regarding mens rea and PTSD.

> \*   \*   \*

> ### B. *Prejudice*

> Because we have found deficient performance by counsel and co-counsel, the question becomes whether the Petitioner was prejudiced by their failure to obtain a prompt mental health evaluation. The post-conviction court found that the Petitioner failed to prove by clear and convincing evidence that he was prejudiced because Dr. Montgomery's testimony did not meet the standards for admissibility and would not have been admitted at the trial.

> In a criminal prosecution, the State has the burden of proving beyond a reasonable doubt that a defendant possessed the required mens rea. *See* T.C.A. § 39–11–201(a)(2) (2014). In this case, the State was required to prove that the Petitioner committed an unlawful, premeditated, and intentional killing of the victim.  *See* T.C.A. §§ 39–13–201 (2014), 39–13202 (2014). In order to rebut the State's proof of mens rea, "evidence of a defendant's mental condition can be relevant and admissible in certain cases[.]" *State v. Abrams*, 935 S.W.2d 399, 402 (Tenn. 1996); *see also State v. Phipps*, 883 S.W.2d 138, 149 (Tenn. Crim. App. 1994). Tennessee recognizes the right of a defendant to present expert proof to negate the existence of the culpable mental state required for the offense. *State v. Hall*, 958 S.W.2d 679, 679-80 (Tenn. 1997); *State v. Ferrell*, 277 S.W.3d 372, 379 (Tenn. 2009); *see* T.C.A. § 39–11–203(e)(1) (2014) (recognizing as a ground of defense the negation of an element of an offense). The so-called rule of diminished capacity "'[p]roperly understood ... is not a defense at all but merely a rule of evidence.'" *Hall*, 958 S.W.2d at 688-89

11

(quoting *United States v. Pohlot*, 827 F.2d 889, 897 (3d Cir. 1987)); *see also State v. Adams*, 405 S.W.3d 641, 660 (Tenn. 2013).

**1.** *Admission Pursuant to the Tennessee Rules of Evidence and State v. Hall*

"When ... a defendant seeks to utilize expert testimony to negate an element of the offense, trial courts must consider the evidentiary principles pertaining to relevancy and expert testimony as set forth in the Tennessee Rules of Evidence." *Ferrell*, 277 S.W.3d at 380 (citing *Hall*, 958 S.W.2d at 689). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Regarding the admissibility of expert testimony, Tennessee Rule of Evidence 702 provides, "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Rule 703 provides,

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence[.]

Whether to admit expert testimony is within the sound discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). A trial court's ruling will be reversed only if the lower court abused its discretion, which requires a showing that the court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)

12

(quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

In the present case, the post-conviction court found that Dr. Montgomery was a qualified expert witness but that his testimony would not have been admissible at the trial because it did not meet the relevance and reliability requirements of the Rules of Evidence and the *Hall* threshold for diminished capacity to form the requisite mental state evidence. The court noted that although Dr. Montgomery diagnosed the Petitioner with PTSD related to the victim's ongoing harassment and threats, the doctor could only state that it was possible the Petitioner's untreated PTSD and the intense emotional circumstances caused the Petitioner to misunderstand the situation and that it was possible the Petitioner lacked the capacity to exercise reflection and judgment before shooting the victim. The court noted, as well, that Dr. Montgomery could only state that it was possible the Petitioner's ability to reflect and exercise judgment was affected by alcohol impairment.

Dr. Montgomery's testimony and report reflect his opinion that the Petitioner suffered from PTSD and that the Petitioner's PTSD and alcohol consumption significantly impaired the Petitioner's ability to exercise reflection and judgment. Dr. Montgomery testified, though, that he thought it was possible the Petitioner lacked the capacity to exercise reflection and judgment due to the PTSD and alcohol consumption, but he was unwilling state that it was his expert opinion that the Petitioner lacked the capacity to do so.

In *State v. Hall*, our supreme court concluded "psychiatric evidence that the defendant lacks the capacity, because of mental disease or defect, to form the requisite culpable mental state to commit the offense charged is admissible under Tennessee law." 958 S.W.2d at 689. The *Hall* court provided the following admonition:

> [W]e emphasize that the psychiatric testimony must demonstrate that the defendant's inability to form the requisite culpable mental state was the product of a mental disease or defect, not just a particular emotional state or mental condition. It is the showing of a lack of capacity to form the requisite culpable mental intent that is central to evaluating the admissibility of expert psychiatric testimony on the issue.

*Id*. at 690 (citing *State v. Shelton*, 854 S.W.2d 116, 122 (Tenn.

13

Crim. App. 1992)). When presented on subsequent occasions with questions involving the admissibility of expert proof, the supreme court has adhered to the parameters of *Hall*. *See, e.g., Ferrell*, 277 S.W.3d at 378-79; *State v. Faulkner*, 154 S.W.3d 48, 56-57 (Tenn. 2005).

Our supreme court's decision in *State v. Hatcher*, 310 S.W.3d 788 (Tenn. 2010), is instructive. In *Hatcher*, the juvenile defendant participated with his older brother and another co-defendant in the shootings of three victims.

> The defense theory ... was that he was so frightened of his brother Chris that he participated in the shootings with less than the culpable mental state required for premeditated murder or attempted premeditated murder. That is, the defense argued that [defendant's fear of his brother] prevented him from acting intentionally and with premeditation while he participated in the shooting.

*Hatcher*, 310 S.W.3d at 808. The defense relied upon the defendant's testimony to support its theory and did not offer expert proof. The defense sought a special jury instruction to support its theory that the defendant's fear of his brother negated the culpable mental state. In determining whether the trial court properly denied the request, the supreme court looked to *Hall* for guidance. The *Hatcher* court noted that the defense theory relied upon "a particular emotional state or mental condition" but not a "lack of capacity to form the requisite mental intent." *Id*. at 805-07 (quoting *Hall*, 958 S.W.2d at 690). For this reason, the court concluded, the trial court properly denied the requested instruction. *Id*. at 807. Although *Hatcher* involved a jury instruction question, it nevertheless provides guidance regarding the principles of *Hall*.

This court recently faced a situation similar to the Petitioner's in *State v. Tray Dontacc Chaney*, No. W2013–00914–CCA–R9–CD, 2014 WL 2016655 (Tenn. Crim. App. May 14, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014). In that case, the State appealed the trial court's denial of its motion in limine to exclude the testimony of a defense psychologist who would testify that the defendant's borderline intellectual capacity combined with related situational factors "eroded" the defendant's capacity to premeditate. The State sought exclusion of the evidence because the expert could not testify unequivocally that the defendant was unable to form the

14

required mens rea. This court examined *Hall*, *Faulkner*, *Ferrell*, and unreported Court of Criminal Appeals cases and concluded that the evidence was irrelevant and inadmissible and that the trial court abused its discretion in denying the State's motion in limine to exclude the evidence. In so holding, this court reasoned:

> [T]he case law holds that expert testimony regarding a defendant's mental state is relevant and admissible only to establish that, at the time of the crimes, the defendant lacked the capacity to premeditate. Since Dr. Kennon's testimony did not do so, we conclude that the trial court erred in finding that the testimony was admissible.

*Tray Dontacc Chaney*, 2014 WL 2016655, at *9; *see State v. Herbert Michael Merritt*, No. E2011–01348–CCA–R3–CD, 2013 WL 1189092, at *27 (Tenn. Crim. App. Mar. 22, 2013) (holding that the trial court did not abuse its discretion in excluding evidence that the defendant's mental disease or defect impaired or reduced his ability to form the required mens rea, rather than stating that the defendant "completely lacked the capacity to commit premeditated first degree murder"), *perm. app. denied* (Tenn. Aug. 13, 2013); *State v. Robert Austin*, No. W2005–01963–CCA–R3–CD, 2007 WL 2624399, at *6 (Tenn. Crim. App. Sept. 10, 2007) (holding that although the trial court erred in ruling that an expert witness could not testify about the ultimate issue of the defendant's mental state, the error was harmless because testimony that the defendant's mental disease merely "impacted" his capacity to form the required mental state was inadmissible under *Hall*); *State v. Antonio D. Idellfonso–Diaz*, No. M2006–00203–CCA–R9–CD, 2006 WL 3093207, at *4 (Tenn. Crim. App. Nov. 1, 2006) ("The fact that the [defendant's] mental disease impaired or reduced his capacity to form the requisite mental state does not satisfy the two-prong requirement in *Hall* and *Faulkner*."), *perm. app. denied* (Tenn. Feb. 26, 2007).

The Petitioner argues in his reply brief that other post-*Hall* cases, including *Ferrell*, do not support a narrow construction of *Hall*. We disagree. We note that *Ferrell* stands for the proposition that evidence to negate the mens rea is not limited to expert psychiatric testimony. 277 S.W.3d at 377–81. The Petitioner also argues that *Hatcher* stands for the proposition that Hall should not be rigidly applied. He notes that *Hatcher* quoted the pattern jury instruction for evidence of mental state and contends that the instruction contains language that indicates the evidence regarding mental

state should be admitted even if it is stated in less than certain terms. We disagree with his reading of *Hatcher* and the pattern instruction. The pattern jury instruction informs the jury of the matters it must resolve as the trier of fact, whereas the admissibility of expert proof is determined by the trial judge and governed by the Rules of Evidence and *Hall*. The preferred evidence still must show that a defendant suffered from a mental disease or defect, not just a particular emotional state or mental condition. To the extent that the Petitioner seeks to utilize the pattern instruction as a guide to the admissibility of evidence by a trial court, rather than evaluation by a jury of evidence that has been properly admitted, his argument is misplaced. *See Hatcher*, 310 S.W.3d at 804–07; T.P.I.–Crim. 42.22 (18th ed. 2014) (evidence of mental state).

We have also rejected the Petitioner's argument that the proposed evidence in *State v. Vaughn*, 279 S.W.3d 584 (Tenn. Crim. App. 2008), was stated with no greater certainty than were the opinions expressed by Dr. Montgomery in the present case. As relevant here, *Vaughn* involved the denial of a defense motion for a continuance and denial of funds for expert assistance. In support of the motion, an expert had submitted an affidavit stating that the defendant's voluntary intoxication "may have rendered him unable to form the requisite mens rea for the alleged actions in accordance with the criteria listed *State v. Hall* and T.C.A. 39–11–503." *Id.* at 597, n.9. In concluding that the trial court erred in revoking the funds for expert assistance, the court said expert testimony on the issue of voluntary intoxication was relevant and admissible pursuant to *Hall*, but the court did not state that the proposed expert's opinion, as stated in the affidavit, would be admissible evidence at a trial. *Id*. at 597–602.

We have considered the other cases upon which the Petitioner relies. *See Adams*, 405 S.W.3d 641; *Mobley v. State*, 397 S.W.3d 70 (Tenn. 2013); *Shuck*, 953 S.W.2d 662; *State v. Don Sanders*, W2006–02592–CCA–R3–CD, 2008 WL 1850934 (Tenn. Crim. App. Apr. 22, 2008); *State v. Maurice Lamont Davidson*, No. M2002–00178–CCA–R3–CD, 2003 WL 151202 (Tenn. Crim. App. Jan. 22, 2003), *perm. app. denied* (Tenn. May 19, 2003). These cases do not support the Petitioner's argument that equivocal expert testimony is permitted.

Based upon our review of the law, we conclude that the post-conviction court did not err in determining that Dr.

16

> Montgomery's testimony would have been inadmissible pursuant to the Rules of Evidence and *Hall*. Dr. Montgomery stated only that it was a possibility that due to a mental disease or defect, the Petitioner lacked the capacity to form the required mens rea. Although Dr. Montgomery was able to state an opinion with certainty regarding the Petitioner's PTSD and substance use disorder diagnoses, evidence of these diagnoses was not relevant and admissible without an opinion regarding the ultimate issue of the Petitioner's capacity to form the required mens rea.

*Williamson*, 476 S.W.3d at 419-23.

The magistrate judge found no merit to petitioner's argument that he was prejudiced by his counsel's failure to develop this defense. Petitioner's first objection is that he was prejudiced because Dr. Montgomery's testimony "would have been admissible under *Hall*," and the state court "interpreted *Hall* unreasonably." Pet.'s Objs. at 24-25. The Court rejects this objection because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "[I]nquiry into issues of state law 'is no part of a federal court's habeas review of a state conviction.'" *Seaman v. Washington*, 506 F. App'x 349, 357 (6th Cir. 2012) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Therefore, whether the Tennessee Court of Criminal Appeals did or did not properly apply the Tennessee Supreme Court's decision in *Hall* in ruling that Dr. Montgomery's testimony would not have been admissible, had it been offered, is irrelevant on habeas review.

Petitioner next objects that "federal constitutional standards would have entitled [him] to present [Dr. Montgomery's testimony] in his defense" because the "Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote[.]" Pet.'s Objs. at 26-27 (quoting *Holmes v. South Carolina*, 547 U.S. 319 (2006)).

17

In *Holmes*, the Supreme Court stated that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," and that "[t]his right is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." 547 U.S. at 324 (citations and internal quotation marks omitted).[4] However, the Court also noted that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 326.

The magistrate judge correctly rejected petitioner's argument that the court of appeals' decision in the present case runs afoul of *Holmes*. There is nothing arbitrary or disproportionate in a rule of evidence that bars equivocal expert testimony that a defendant's mental disease or defect "may" or "possibly might" affect defendant's *mens rea*. The court of appeals found that this rule serves the legitimate interests of limiting expert testimony to that which will assist the jury in resolving factual disputes by requiring such testimony to be presented with a reliable degree of certainty. As noted by the post-conviction court and the court of appeals, Dr. Montgomery

---

[4] The Court cited a number of examples of arbitrary evidence rules, including statues that "barred a person who had been charged as a participant in a crime from testifying in defense of another alleged participant unless the witness had been acquitted"; a "state hearsay rule [that] did not include an exception for statements against penal interest, the defendant was not permitted to introduce evidence that [a third party] had made self-incriminating statements to three other persons" regarding the crime of which defendant was charged; and a rule whereby "the defendant was prevented from attempting to show at trial that his confession was unreliable because of the circumstances under which it was obtained." *Id.* at 325-26. *Holmes* itself invalidated a statute that prohibited defendants from offering evidence that a third party committed the murder of which he was charged.

could only state that it was *possible* the Petitioner's untreated PTSD and the intense emotional circumstances caused the Petitioner to misunderstand the situation and that it was *possible* the Petitioner lacked the capacity to exercise reflection and judgment before shooting the victim. The court noted, as well, that Dr. Montgomery could only state that it was *possible* the Petitioner's ability to reflect and exercise judgment was affected by alcohol impairment.

*Williamson*, 476 S.W.3d at 421 (emphasis added). Excluding equivocal testimony of this nature did not deprive petitioner of his right to present a defense. He therefore suffered no prejudice as a result of his attorneys' failure to offer this evidence at trial. Petitioner's objections to the magistrate judge's analysis of this claim are overruled.

### *Ineffective Assistance of Counsel: Failure to Investigate and Use Evidence that Would Support Self-Defense and Lack of Premeditation*

Petitioner's next objection is that the magistrate judge incorrectly analyzed his claims that his attorneys were ineffective for failing to find and use evidence relative to his defenses of self-defense and lack of premeditation. Pet.'s Objs. at 1, 30. The Tennessee Court of Criminal Appeals addressed these claims as follows:

In addition to the allegations regarding the failure to pursue mental health evidence to challenge mens rea, the Petitioner contends that his trial attorneys provided ineffective assistance in investigating and preparing for the trial in several respects. He contends they failed to investigate and preserve cell phone records and voice messages, failed to conduct effective interviews of available witnesses, failed to prepare for and conduct an effective cross-examination of Brandon Clark, and failed to develop a defense theory. He argues that these failures, individually or collectively, entitle him to post-conviction relief.

**A. *Failure to Investigate and Preserve Cell Phone Records and Voice Messages***
The post-conviction proof showed that the Petitioner provided his cell phone to his mother before his arrest in order for her to provide it to counsel to obtain stored messages for use at the trial.

19

Counsel testified that he hired a person with technical expertise to obtain messages from the Petitioner's cell phone. Co-counsel testified that he was responsible for obtaining the Petitioner's cell phone records, that he had trouble because the provider only maintained records for a short time, and that a subpoena was issued to the cell phone service provider on the Friday before the trial began the following Monday. At the trial, the defense was unable to play the voice messages because the Petitioner's cell phone service had lapsed.

The post-conviction record reflects that counsel knew early in the case that the ongoing conflict between the Petitioner and the victim was important factually. The Petitioner's mother provided counsel with the Petitioner's cell phone, but counsel took no immediate action to preserve any available voice messages. The failure to investigate and preserve any available evidence was deficient performance.

Turning to the question of prejudice, we note the Petitioner's trial testimony that he received text and voice messages from the victim and that approximately ninety-eight percent of them were threatening and 100% contained profanity. The Petitioner said that at one point, he filed a complaint with the Macon County Sheriff's Department and had an officer review threatening text and voice messages from the victim. The Petitioner read the content of some of the text messages to the jury and testified about the contents of the voice messages. He said that he had not saved some of the voice messages because of his cell phone's limited capacity. The Petitioner also testified in detail about in-person encounters with the victim. Macon County Sheriff's Deputy Ron Smith testified that in the process of taking a report from the Petitioner against the victim, he reviewed text messages and listened to voice messages, but he did not testify about the contents. The State acknowledged at the trial that the victim was disgruntled with the Petitioner and that the victim sent the text messages and left the voice messages for the Petitioner.

In assessing prejudice, we think it is significant that despite the inability to play the messages for the jury, the Petitioner was able to introduce evidence about their contents. The Petitioner argues that the victim's inflection and anger would have provided probative evidence to support Dr. Montgomery's testimony, had it been presented, of the Petitioner's PTSD. As we have stated, Dr. Montgomery's testimony was inadmissible. We also note the

20

State's acknowledgment at the trial that the victim was angry and hostile toward the Petitioner.

We cannot conclude that the Petitioner was prejudiced by counsel's failure to present the recorded voice messages at the trial. The Petitioner is not entitled to relief on this basis.

**B.** *Failure to Conduct Effective Interviews of Roger Williamson, Maria Creasy, and John Michael McKinnon*
The Petitioner contends that his trial attorneys failed to conduct effective interviews of the Petitioner's parents and his mother's then-boyfriend. He claims that the witnesses would have assisted Dr. Montgomery's evaluation and supported the Petitioner's testimony.

First, the Petitioner argues that his trial attorneys failed to conduct an adequate interview of his father, Roger Williamson. The Petitioner's father did not testify at the trial but did testify at the post-conviction hearing that he was present when the victim chased the Petitioner home after trying to run the Petitioner off the road. The Petitioner asserts that Mr. Williamson could have testified about the large size of the truck the victim drove, the victim's "cut[ting] the tailspin" in Mr. Williamson's driveway, and the Petitioner's "shaken" demeanor. Mr. Williamson also testified at the post-conviction hearing that the defense team never questioned him in detail about the Petitioner's background.

Second, the Petitioner argues that his mother, Maria Creasy, was not adequately interviewed. Ms. Creasy did not testify at the trial. The Petitioner asserts that she could have provided relevant information about his childhood, the events before and after the shooting, and his relationship with Ms. Holmes. Regarding the Petitioner's history, he argues that Ms. Creasy could have testified about both his parents' alcoholism and the conflicts between the Petitioner and his father and that these facts contributed to a predisposition to PTSD. He notes Ms. Creasy's testimony at the post-conviction hearing about his starting a new job two days before the shooting and his being unreachable and unable to get out of bed the day before the shooting. He likewise notes her post-conviction testimony about his beer consumption on the day of the crime and his demeanor after the shooting.

Third, the Petitioner argues that John Michael McKinnon was never interviewed about the events on the day of the crime but that

he could have testified about the difficulties in the Petitioner and Ms. Holmes's relationship. The Petitioner notes that he was with Mr. McKinnon all day on the date of the crime and that Mr. McKinnon could have testified about their actions, including the amount of beer they drank after finishing work that afternoon.

The record reflects that both trial attorneys met with the Petitioner and that counsel spent a substantial amount of time reviewing the case with the Petitioner. Co-counsel retained investigative assistance early in the case, and Ms. Waltz met with the Petitioner about the facts of the case. Her written report reflects that the Petitioner told her about the incident in which the victim tried to run him off the road and about the conflict between himself and the victim due to the Petitioner's involvement with Ms. Holmes. By his own account, the Petitioner had two or three beers on the night of the crime, and counsel did did not think the Petitioner was intoxicated when the Petitioner turned himself in to the police.

Regarding the adequacy of the investigation, the post-conviction court found that the trial attorneys' testimony was credible regarding their knowledge of the case and preparedness. We acknowledge the court's adverse credibility determinations relative to co-counsel, particularly as regards his attorney's fees, but we note that the court separately credited his testimony regarding his knowledge of the case and trial preparation. We note that counsel's testimony provides some corroboration of co-counsel's preparation efforts. In addition, the court specifically noted and credited counsel's testimony that he knew the facts of the case. The court found that the Petitioner failed to prove by clear and convincing evidence that his attorneys' investigation, preparation, or trial performance was inadequate. The evidence does not preponderate against the court's findings. The Petitioner's attorneys were aware of the prior conflicts between the Petitioner and the victim and the Petitioner's related state of vigilance and fear. They had Ms. Waltz's report containing information about the incident in which the victim tried to run the Petitioner off the road and followed him home. They investigated the Petitioner's alcohol consumption by asking him how much he drank on the day of the crime, and his answer was consistent with counsel's personal observations of the Petitioner at the sheriff's department after the crime. The court noted that no proof had been offered to show that the Petitioner was intoxicated at the time of the shooting to the extent that it affected his ability to premeditate. The Petitioner has not shown that his trial attorneys' performance was deficient and that he was

22

prejudiced by counsel's performance. He is not entitled to relief on this basis.

## C. *Failure to Prepare for and Conduct an Effective Cross–Examination of Brandon Clark*

The Petitioner contends that his trial attorneys were ineffective for failing to prepare for and conduct a successful cross-examination of Brandon Clark, who said in a written statement that the Petitioner told him the shooting had been premeditated. The Petitioner testified that after he reviewed the discovery materials, he notified counsel that Mr. Clark's statement was inaccurate about the Petitioner's having said the shooting was premeditated. He contends that counsel should have investigated Mr. Clark's personnel record because it contained information about an investigation of Mr. Clark's off-duty presence at a suspected "drug house" and Mr. Clark's apparent intoxication, which he argues could have been used as impeachment evidence. He also argues that counsel's cross-examination of Mr. Clark was ineffective because counsel was not adequately familiar with the Mr. Clark's written statement when counsel attempted unsuccessfully to get Mr. Clark to say that Mr. Clark had not quoted the Petitioner when Mr. Clark used the word "premeditated" in the statement. However, Mr. Clark said he had quoted the Petitioner despite his lack of quotation marks around the word in the statement and his use of quotation marks elsewhere in the statement.

The post-conviction court found that the information in Mr. Clark's personnel file about the off-duty incident was not relevant impeachment evidence. The court noted that the statement had been provided in discovery, that counsel had talked to Mr. Clark a couple of times before the trial, that Mr. Clark had been a reluctant witness, that the prosecutor had been frustrated with the witness, and that the prosecutor had to show the statement to the witness "to draw it out of him." The court found that the Petitioner failed to show ineffective assistance in the preparation for and cross-examination of Mr. Clark. As we noted previously, the post-conviction court credited counsel's testimony that he knew the facts of the case. The Petitioner has not shown on appeal that the evidence preponderates against the post-conviction court's factual findings or that its conclusions are unsupported by the factual findings. The Petitioner is not entitled to relief on this basis.

## D. *Failure to Develop a Defense Theory*

The Petitioner contends that his trial attorneys failed to develop a "complete theory of the defense because their theory lacked a recognized challenge to premeditation." He argues that the attorneys' lack of further investigation about the Petitioner's alcohol consumption and lack of a timely psychiatric evaluation show their failure to develop a defense theory to show why the Petitioner could not form the mens rea for first degree murder. As we have stated, the post-conviction court expressed concern about co-counsel's billing practices, but it credited counsel's testimony about his and co-counsel's investigation and preparation of the defense. The record shows that the Petitioner's trial attorneys consulted with him about the facts and the trial. To the extent that the Petitioner may have provided them with erroneous or misleading information about his alcohol consumption, the reasonableness of the Petitioner's attorneys' actions must be evaluated in this light. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. Although the attorneys failed to consult with a psychiatric expert promptly, the Petitioner failed to demonstrate by clear and convincing proof that prompt consultation would have resulted in the development of admissible evidence to support a defense theory that the Petitioner was unable to form the culpable mental state. Prompt consultation would not have affected the defense strategy because Dr. Montgomery's testimony was inadmissible. The Petitioner is not entitled to relief on this basis.

*Williamson*, 476 S.W.3d at 424-28.

The magistrate judge analyzed each of these claims and found none to have merit. In his objections regarding these issues, petitioner narrows his focus to the following three alleged failures of his trial attorneys: their failure to preserve petitioner's voicemails, their failure to "present at trial proof of the road incident, where [the victim] attempted to kill or injure [petitioner]," and their failure to "develop and present proof that [petitioner] had ingested quite a bit of alcohol during the late afternoon to evening of the shooting." Pet.'s Objs. at 30-31.

Petitioner argues that if his attorneys had presented the additional voicemails and evidence of the road incident, "it would have been completely clear that [he] was entitled to the self-defense instruction, and so the prejudice he suffered from this failure was the denial of that

24

instruction." *Id.* at 31. The magistrate judge correctly rejected this argument. As the appellate court noted, evidence of the voicemails was presented at trial. Petitioner read some of the voicemails aloud and testified about the contents of others. He also testified that he reported the threatening messages to the police, and a sheriff's deputy, Ron Smith, verified in his testimony that he had done so. Further, petitioner "testified in detail about in-person encounters with the victim." *Williamson*, 476 S.W.3d at 425. Therefore, petitioner presented the evidence in question for the jury's consideration.

Petitioner's suggestion that the trial court would have given the requested self-defense instruction if counsel had presented additional voicemails and more detail about the road incident is far-fetched. As noted by the court of appeals on petitioner's direct appeal, the defense of self-defense permits a person to use force against another "when and to the degree the person reasonably believes the force is *immediately necessary* to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an *imminent danger* of death or serious bodily injury." *Williamson*, No. 2011 WL 3557827, at *13 (quoting Tenn. Code Ann. § 39–11–611(a) (emphasis added)). The state appellate court reasonably concluded that this defense simply did not apply in this case because petitioner drove thirteen miles to the victim's house, opened his car door, and shot the unarmed victim several times while his arms were raised. Petitioner faced no imminent danger. He therefore was not prejudiced by his attorneys' failure to submit the additional evidence in question because there is no "reasonable probability" that the trial court would have instructed the jury on self-defense if this evidence had been presented. *Strickland*, 466 U.S. at 694. Nor, had the jury been instructed on self-defense, is there any reasonable probability that it would have believed that

25

petitioner acted in self-defense.

Petitioner next argues that "counsel failed to present the evidence of relatively significant intoxication. Had counsel timely consulted with Dr. Montgomery, counsel would have learned of [petitioner's] PTSD diagnosis and the synergistic effect of alcohol on the PTSD symptoms. Consequently, counsel would have presented a stronger case that the PTSD likely prevented [petitioner] from premeditating that night." Pet.'s Objs. at 31. The magistrate judge correctly rejected this argument. The state appellate court found that counsel's performance in this regard was not deficient. When counsel met with petitioner on the same night as the shooting, "he did not notice signs of intoxication." *Williamson*, 476 S.W.3d at 413. Further, petitioner told counsel's investigator that he had consumed "two or three beers on the night of the crime but did not mention an alcohol problem." *Williamson*, 476 S.W.3d at 413. Under these circumstances, the state appellate court reasonably concluded that counsel did not perform deficiently by failing to further investigate whether petitioner was so intoxicated at the time of the shooting that it may have exacerbated his PTSD and thereby prevented him from premeditating. Petitioner's objection as to this issue is overruled.

Petitioner's final objection is that the magistrate judge failed to consider the "cumulative effect of counsel's errors." Pet.'s Objs. at 31. The Court rejects this argument, as "a claim of cumulative error is not a cognizable ground for relief on federal habeas review." *Kelly v. Collins*, No. 20-3221, 2020 WL 5000062, at *6 (6th Cir. June 26, 2020) (citing *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)).

***Conclusion***

For the reasons stated above,

IT IS ORDERED that Magistrate Judge Frensley's R&R is hereby accepted and adopted as the findings and conclusions of the Court. Petitioner's objections are overruled.

IT IS FURTHER ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has made no substantial showing that any of his constitutional rights have been violated.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION

Dated: January 26, 2021
     Detroit, Michigan

27